Argued September 9, affirmed December 15, 1971

DEITZ, *Appellant, v.* SAVARIA, SMITH,
*Respondents.*

491 P2d 620

*James T. Fitting,* Beaverton, argued the cause and filed briefs for appellant.

*Ridgway K. Foley, Jr.,* Portland, argued the cause for respondents Leon S. Savaria and Richard R. Smith. With him on the brief were Souther, Spaulding, Kinsey, Williamson & Schwabe, Portland, and Norman N. Griffith, Portland, attorney for respondent Dorrell Martyn.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, HOWELL, and BRYSON, Justices.

HOLMAN, J.

A Beaverton municipal building inspector brought this action against a construction contracting firm, Savaria-Smith, and its employee, Martyn, for injuries allegedly received at defendant Savaria-Smith's building site. Plaintiff asserted that a scaffolding on which he was standing during his inspection collapsed as a result of defendants' negligent construction and maintenance. Both plaintiff's employer, the City of Beaverton, and defendant Savaria-Smith were employers subject to the provisions of the Workmen's Compensation Act. Defendants interposed pleas of joint supervision and control under ORS 656.154 of the Act in bar of the action.

Plaintiff was on the premises exclusively for the purpose of inspection and had no active part in the erection or construction of the building other than to require that it conform to the building code of the City of Beaverton.

ORS 656.154 provides as follows:

"(1) If the injury to a workman is due to the negligence or wrong of a third person not in the same employ, the injured workman, * * * may elect to seek a remedy against such third person. However, no action shall be brought against any such third person if he or his workman causing the injury was, at the time of the injury, on premises over which he had joint supervision and control with the employer of the injured workman and was an employer subject to ORS 656.001 to 656.794.

"(2) As used in this section, 'premises' means the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation.

"* * * * *."

In order for an action to be barred by the statute, it must appear 1) that defendant Savaria-Smith and plaintiff's employer, the City of Beaverton, were employers subject to the Workmen's Compensation Act; 2) that defendant Savaria-Smith or its workman causing the injury had joint supervision and control with plaintiff's employer over the premises upon which the injury occurred; and 3) that defendant Savaria-Smith and plaintiff's employer were engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes in operation; that is, plaintiff must have been working with the employees of Savaria-Smith in a common

activity which caused him to be exposed to the hazards created by such mutual engagement of the employers. *Bass v. Dunthorpe Motor Trans.,* 258 Or 409, 410-11, 484 P2d 319 (1971); *Fisher v. Rudie Wilhelm Warehouse Co.,* 224 Or 26, 35, 355 P2d 242 (1960); *Johnson v. Timber Structures, Inc.,* 203 Or 670, 695, 281 P2d 723, 726 (1955) (Mr. Justice Tooze specially concurring).

It is conceded that the City of Beaverton and Savaria-Smith were employers subject to the Act.

 The first issue is whether plaintiff's employer and Savaria-Smith had joint supervision and control of the premises upon which plaintiff was injured. Plaintiff contends that the joint control provisions require plaintiff's employer to have actual control of the object causing plaintiff's injury and to have actively joined with defendants in the construction so that the City of Beaverton had actual control over working conditions, safety standards, and operational conduct. Plaintiff submits that such requirements are not met in this case.

Plaintiff's position is contrary to past decisions of this court. *See Bass v. Dunthorpe Motor Trans., supra* at 641; *Thomas v. Foglio,* 225 Or 540, 358 P2d 1066 (1961); *Pruett v. Lininger et al,* 224 Or 614, 356 P2d 547 (1960). In *Pruett* we said as follows:

> "* * * [T]he exclusive coverage of the Workmen's Compensation Act applies when there is an operational co-mingling of the workmen of two or more covered employers *even though only one of the covered employers may be said to be in actual control of the site where the work is under way.*" 224 Or at 623 (Emphasis added).

The term "joint supervision and control" describes a situation in which each employer has control of his em-

ployees' activities and, thus, through them has some control of the conditions under which his employees and the employees of the other employer must work. *Bass v. Dunthorpe Motor Trans., supra.* In the present case, while he was inspecting the building, plaintiff could have knocked a hammer off the scaffolding onto one of defendant employers' workmen, or, one of such workmen could have endangered plaintiff with faulty scaffolding, as alleged. Both employers had control, through their employees, of the premises in the sense that they could affect the conditions under which the employees of both employers worked.

 The next, and more difficult, question is whether plaintiff's employer and defendant Savaria-Smith were engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes in operation on the premises in question. Plaintiff contends they were not because his employer's purpose in operation was regulation—not construction—and there was no joint economic activity for profit. Plaintiff cites the cases of *Hensler v. City of Portland,* 212 Or 28, 318 P2d 313 (1957) and *Kosmecki v. Portland Stevedoring Co.,* 190 Or 85, 223 P2d 1035 (1950), as being representative of his point of view. He also points to the language in some of the early cases relating to pickup and delivery situations.

In *Hensler,* plaintiffs were employees of a boat builder. One of their employer's boats had been delivered by railroad car to defendant's dock for launching. While the boat was being launched, plaintiffs were in the boat working on it for their employer. They were injured as the result of a break in the slings with which defendant was lifting the boat from the railroad car. The court held that the employees of

both employers were not engaged in performing component parts of a general undertaking and, therefore, were not engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes in operation.

In *Kosmecki,* one employer was repairing a ship and the other was loading it with cargo. This court held that they and their employees were not engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes in operation.

We believe the present situation is more closely analogous to the one in *Plummer v. Donald M. Drake Co.,* 212 Or 430, 320 P2d 245 (1958).[1] In that case, plaintiff was the employee of a firm of architects who had been hired by a school district to inspect the construction of a school. Defendant was the general contractor constructing the building. Because of defendant's negligence, plaintiff was injured while making an inspection of the premises. The court held that under the provisions of ORS 656.154 these facts foreclosed plaintiff's recovery. The one possible distinction between the factual situation in *Plummer* and the one in the present case is that, in *Plummer,* plaintiff's employer, through plaintiff's efforts, was determining for the owner, rather than for a public regulatory agency, whether the construction was proper. Plaintiff's employer had no more or less to do with the actual construction than did plaintiff's employer in this case. In both instances, the plaintiff's

---

[1] For a closely similar case, *see* Cornelison v. Seabold, 254 Or 401, 460 P2d 1009 (1969), where a workman constructing a water tank which fell was not allowed to sue the engineering firm which designed it because the engineer had an inspector on the job.

employer was determining whether the building was being constructed in conformance with certain necessary standards. In both situations, the common end in view of all concerned was a building which met such standards. It is not necessary that the two employers be engaged in a common enterprise as their ultimate business objective. *Fisher v. Rudie Wilhelm Warehouse Co.*, 224 Or 26, 34, 355 P2d 242 (1960).

The factual situation in *Plummer* is an almost exact duplication of that in *Crawford v. Woodrich Const. Co.*, 239 Minn 12, 57 NW2d 648 (1953), upon which the dissenting opinion depends. In *Crawford,* a state inspector was injured while determining whether a road contractor was complying with state specifications in the construction of a highway. The Oregon and Minnesota courts reached different results in similar circumstances. The dissenting opinion believes that *Plummer* is not in point while *Crawford* is. It does not explain in what manner the inspection of the building by the school board's inspector for the purpose of seeing that it was built in conformance with specifications differs from the inspection of the highway by the State Highway Commission's inspector for the purpose of seeing that it was being constructed in conformance with specifications. It can properly be argued that in *Plummer* the court's holding that the circumstances did not justify an action under ORS 656.154 was unnecessary to the opinion. However, it cannot be contended that the court did not so hold.[2]

The real difference between this opinion and the dissenting opinion is how large the circle of the

[2] For comment on the gross inconsistency of Minnesota opinions on this subject and the consistency of the Oregon opinions in giving a broad construction to the statutory limitation on the bringing of such actions, see 2 Larson, Workmen's Compensation Law § 72.34.

"common enterprise" or "related purpose" is drawn. If it is seen as being as large as a building completed in conformance with necessary standards, a conclusion is reached in conformance with this opinion. On the other hand, if it is seen as being as small as the act of physical construction, the conclusion of the dissenting opinion is reached. This majority opinion sees both the man who frames the building and the man who determines whether it is properly framed as being engaged in the accomplishment of a "related purpose." The dissenting opinion does not.

Although the case is a close one, it is our conclusion that, in this day and age, the inspection of a building is as much a necessary part of the building's construction as is the installation of the electrical equipment or plumbing. Plaintiff was on the premises almost every day. Inspection was an essential without which the building could not, and would not, have been built. Both employers, the City of Beaverton as well as Savaria-Smith, were engaged in component parts of the completion of a building which would meet the necessary standards. It is true that the city had no pecuniary interest in the completion of the building, except in a very indirect way, but we do not believe that a pecuniary interest in the completion is essential. The important thing is the common aim—a structure in conformance with the applicable standards.

The judgment of the trial court is affirmed.

HOWELL, J., dissenting.

I do not agree that plaintiff's employer, the city of Beaverton, was engaged in the furtherance of a common enterprise, or in the accomplishment of the same or related purposes with Savaria-Smith, the firm which was constructing the building.

I cannot believe that the legislature intended that a city building inspector, whose only duty is to make certain the construction complies with the local building code, and a contractor building an apartment house are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes. One is engaged in a commercial enterprise for profit, and the other is engaged in the governmental activity of inspection to determine whether the construction complies with the building code and presumably to require the contractor to make such changes as are necessary to comply with the code.

To the best of my knowledge, this is the first time this court has extended its interpretation of the phrase to include in the definition one engaged in a governmental activity and one engaged in a commercial project. In other cases the employers were engaged in the furtherance of a commercial purpose. *See e.g., Fisher v. Rudie Wilhelm Warehouse Co.,* 224 Or 26, 355 P2d 242 (1960); *Brown v. Underwood Lumber Co.,* 172 Or 261, 141 P2d 527 (1943); *Inwall v. Transpacific Lumber Co.,* 165 Or 560, 108 P2d 522 (1941).

In another case which involved a municipality, *Hensler v. City of Portland,* 212 Or 28, 318 P2d 313 (1957), the plaintiff was an employee of a boat builder who had contracted with the city of Portland through the Department of Public Docks for the delivery of a boat. Plaintiff's duties were to make the boat shipshape. While the boat was being unloaded, a crane broke and injured plaintiff. This court held that plaintiff's employer and the city of Portland were not engaged in the furtherance of a common enterprise or in the accomplishment of the same or related purposes.

The majority relies on the case of *Plummer v. Donald M. Drake,* 212 Or 430, 320 P2d 245 (1957),

wherein an employee of a firm of architects hired to inspect the construction of a school was injured by the negligence of the general contractor who was constructing the building. The case is not applicable. In *Plummer* the primary question was the constitutionality of ORS 656.154. A secondary issue was whether defendant's supplemental answer alleged sufficient facts to constitute a defense. Generally, the answer alleged that plaintiff and the contractor were on premises over which plaintiff's employer and the defendant contractor had joint supervision and control and were engaged in the furtherance of a common enterprise and the accomplishment of the same or related purposes within the meaning of the statute. This court decided that the answer alleged sufficient facts to constitute a defense and that the demurrer was properly overruled. However, the opinion added the additional comment that if plaintiff should, on trial, establish the facts alleged, "he would without doubt also establish that he is barred from maintaining this action by ORS 656.154." Obviously, the court was dealing with a question of pleading, and the specific issue was not squarely before the court.

More importantly, however, *Plummer* did not involve one party being engaged in a governmental activity of inspection. Presumably the architect was engaged by the school district, which contracted with the defendant to construct the school building. In the instant case, plaintiff was employed by the city of Beaverton, which had no interest in the construction other than to see that it complied with the building code.

Our statute, ORS 656.154, was adopted from the Minnesota Compensation Law. *Plummer v. Donald M. Drake Co., supra.* The interpretation given the

statutes by the Minnesota courts is persuasive. In fact, in *Johnson v. Timber Structures, Inc.*, 203 Or 670, 281 P2d 723 (1955), the specially concurring opinion of Justice Tooze (the opinion was actually the majority opinion as three other justices joined) stated that we should have "no hesitancy in adopting" the rule announced by the Minnesota Supreme Court in *Gleason v. Geary*, 214 Minn 499, 8 NW2d 808 (1943). There, the Minnesota court stated that the terms "common enterprise" and "accomplishment of the same or related purposes" meant that the employers were, at the time and place of injury, engaged on the same project and their employees were exposed to the same or similar hazards created by such engagement.①

A more recent case is *Crawford v. Woodrich Const. Co.*, 239 Minn 12, 57 NW2d 648 (1953). There, a highway inspector employed by the highway department was injured by a truck whose driver was employed by either an independent contractor or an employee of the company doing the highway construction. The question presented was whether plaintiff's employer, the state of Minnesota, and the contractor were "engaged in the due course of business (a) in the furtherance of a common enterprise, or (b) in the accomplishment of the same or related purposes" within the meaning of the Minnesota statutes so as to bar plaintiff from an action against the contractor. The court stated:

> "* * * Here the state, plaintiff's employer, and the company clearly were not engaged in the same project. The state was not engaged in the

---

① The Minnesota court also stated that "[b]usiness is related when the parties are mutually or reciprocally interested in a *commercial way*; or where the business of one has a necessary relation toward or in conjunction with the other." (Emphasis supplied.) 8 NW2d at 810.

project of building or repairing a road; its only connection with the project was that it had contracted for the road-building services of the company. It cannot be said that the state—or any other employer—which merely carries on a systematic inspection to insure that it is getting the quality of services for which it has obligated itself to pay under a construction contract is engaged in the same project as the contractor who performs the work. Furthermore, the plaintiff as an inspector herein was not engaged in the performance of the project. When he found a defect, he performed no services to correct such defect. Correction work was left entirely to employes of the company. Obviously plaintiff is not barred from prosecuting a common-law action against the company." (Footnote omitted.) 57 NW 2d at 654.

The same reasoning applies to the case at bar. The city was not engaged with the defendants in the common enterprise of building an apartment house. The city's only interest was in seeing that the construction of the apartment house complied with the building code. Any correction work would be done by the contractor, and the plaintiff was in no manner engaged in the performance of the project.

I would reverse.

O'CONNELL, C. J., concurs in this dissent.